IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HENRY CORREA,                              Case No. 1:14-cv-01436-MA

               Plaintiff,                  OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

JOHN E. HAAPALA, Jr.
401 E. 10th Avenue, Suite 240
Eugene, OR 97401

       Attorney for Plaintiff

JANICE E. HEBERT
Assistant United States Attorney
District of Oregon
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

FRANCO L. BECIA
Assistant Regional Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 900
Seattle, WA 98104-7075

       Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Henry Correa seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).    For the reasons that follow, I affirm the Commissioner's decision.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed an application for DIB on April 8, 2011, and protectively filed an application for SSI on April 30, 2011, alleging disability beginning October 31, 2009, due to high blood pressure, back pain, and poor blood circulation. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a video hearing on November 20, 2012, at which plaintiff appeared with her attorney and testified. A vocational expert, Steven R. Cardinal, also appeared at the hearing and testified. On February 6, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born on July 20, 1960 and was 49 years old on the alleged onset of disability date. Plaintiff completed high school, and has past relevant work as a gas station attendant, construction maintenance worker, irrigator, ranch hand, and paving worker.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520; 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe

impairments:  status post caged fusion L5-S1; lumbar degenerative joint disease with facet arthrosis L4-5 and L5-S1 without neural impingement;  bulging  disc  L1-2  without  neural  impingement; hypertension; and bradycardia with associated fatigue.  At step three, the ALJ found that plaintiff's impairments, or combination of  impairments,  did  not  meet  or  medically  equal  a  listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work, however, plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; he can sit, stand, and walk six hours in each in an eight-hour day, with the option to sit or stand at will while performing essential functions; he can never climb ladders, ropes or scaffolds due to dizziness; he can occasionally climb ramps or stairs, crouch, stoop, kneel, and crawl; he can frequently balance; due to narcotic medication use and alleged dizziness from hypertension, he is to have no exposure to hazards such as unprotected heights or large moving machinery and he is limited to understanding and carrying out simple instructions.

At step four, the ALJ found that plaintiff is unable to perform any past relevant work.  At step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as

assembler, order filler, and electronics worker. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from October 31, 2009 through the date of the decision.

### ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated his testimony; (2) the ALJ improperly evaluated the opinion of his treating physician Richard P. Musselman, D.O.; and (3) the ALJ erred at step five.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec.*

*Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

I.  **Plaintiff's Credibility**

   A.  **Standards**

   To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis.  20 C.F.R. §§ 404.1529, 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

   The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*,

763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039.
Factors the ALJ may consider when making such credibility
determinations include the objective medical evidence, the
claimant's treatment history, the claimant's daily activities,
inconsistencies in testimony, effectiveness or adverse side effects
of any pain medication, and relevant character evidence. *Ghanim*,
763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the hearing, plaintiff testified that he completed twelfth
grade and last worked in October 2009 for a paving company fixing
tires and was laid off because the job was seasonal. Plaintiff
testified that he worked for the paving company for five or six
months, and at the time he was laid off, he was experiencing
difficulty. Plaintiff further testified that in December of 2009,
he tried to cut down a Christmas tree for a friend, but had
difficulty working the handsaw and experienced fatigue, back pain,
and blurred vision. Tr. 65.

Plaintiff testified that he takes medication for his back
pain, high blood pressure, and migraine headaches, that he no
longer has any side effects from the medications, and that they are
helpful. Plaintiff testified that he has migraines approximately
three times a week.

Plaintiff stated that he can sit for 10 to 15 minutes before
needing to get up because of tension in his back. Plaintiff
estimated he can lift 20 pounds, can stand for 10 to 15 minutes

before needing sit down, and can walk for 15 to 20 minutes before needing to rest. Plaintiff estimated that he lies down for 15 minutes approximately five or six times per day. Plaintiff stated that his wife helps him with his shoes, and that he cannot carry groceries.

Plaintiff testified that when he was drinking, he consumed a 12 pack of beer on the weekend, but that he no longer drinks. Plaintiff stated that the tingling in his feet has improved since he stopped drinking. Plaintiff stated that he only drives for emergencies, such as when scheduling difficulties require him to take his wife to work. Tr. 58. Plaintiff testified that on an average day, his pain is a six or seven on a 10-point scale, and that after he takes Percodan, his pain is reduced to a two or three.

Plaintiff testified that he went to the emergency room on New Year's Eve in 2011 because his blood pressure was out of control and plaintiff believes he suffered a heart attack that night, although one was not diagnosed. Tr. 62. Plaintiff also testified that a physician in Redding advised him he would need a pacemaker. Tr. 63. Plaintiff stated that he continues to experience tingling in his knees, and that he believes the tingling is caused by his back. Tr. 64.

In a May 17, 2011 Exertion Questionnaire, plaintiff indicated that he is in constant pain that prevents him from doing any

8 - OPINION AND ORDER

activity.   Plaintiff reported that he cannot climb stairs, lift, carry, grocery shop, clean the house, or drive a car.  Tr. 223-24. Plaintiff reported that he sleeps for only 45 minutes at a time due to pain, that he uses a brace, and that his wife helps him get dressed and put on his shoes.  Tr. 225.

In the decision, the ALJ concluded that plaintiff's testimony concerning the intensity, persistence and limiting effects of his limitations is not entirely credible.  The ALJ cited numerous reasons, when taken together, constitute clear and convincing reasons to reject plaintiff's testimony.

First, the ALJ identified several inconsistent statements.  An ALJ may consider inconsistencies in a claimant's testimony or between the testimony and a claimant's activities when assessing credibility.  *Molina*, 674 F.3d at 1112.  And, an ALJ may discredit a claimant's testimony when a claimant reports participating in everyday activities which are transferrable to a work setting.  *Id.*

The ALJ discussed that at the hearing, plaintiff testified that he last worked in October 2009.   The ALJ also noted plaintiff's testimony that he wanted to continue working despite being laid off, and plaintiff's explanation that he could no longer work because of fatigue and pain that he experienced when cutting down a Christmas tree for a friend in 2009.  Tr. 29, 65.  The ALJ found these statements inconsistent with plaintiff's January 2011 report to Edward P. Richert, M.D., plaintiff's then treating

physician, in which plaintiff described that working manual labor
in the Auction Yard in December 2010 had "stirred up" his back pain
and that he had become sweaty and short of breath when cutting down
a Christmas tree the previous month.  Tr. 29, 289.  Dr. Richert
observed that it had been three and a half years since he had seen
plaintiff, despite advising plaintiff to return for a blood
pressure re-check.  Tr. 289.  Thus, as the ALJ correctly noted,
plaintiff's testimony that he stopped working in October 2009 was
inconsistent with his report to Dr. Richert that he worked in the
auction yard in December 2010, over a year after his alleged onset
of disability date.  The ALJ's findings are supported by
substantial evidence, and the ALJ reasonably discounted plaintiff's
testimony on this basis.

The ALJ also noted that at the hearing and in a May 2011
Exertion Questionnaire, plaintiff indicated that he no longer
performs any household chores and needs assistance from his wife to
get dressed and put on his shoes.  Tr. 29-30, 54-56, 223-25.  The
ALJ found these statements contradicted by his April 17, 2011
report to Shahid Ali, M.D., that he is capable of cooking,
cleaning, vacuuming, and doing the dishes, and his February 2012
report to Dr. Musselman that he is independent with grooming, self-
care, cooking, shopping, housework, driving, and using the stairs.
Tr. 257, 384.  Similarly, the ALJ found plaintiff's assertion that
he needs assistance putting on his shoes contradicted by Dr. Ali's

observations that plaintiff was able to walk without assistance, sit comfortably, and take his shoes off and put them on "without difficulty." Tr. 258. The ALJ's findings are wholly supported by substantial evidence.

Having carefully reviewed the record, the ALJ appropriately discounted plaintiff's inconsistent statements about his ability to work, perform household chores, and his ability put on his shoes as they undermine his allegation of total disability. *Id.* at 1112-13; *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1225 (9th Cir. 2010). Thus, I conclude that the numerous inconsistencies identified by the ALJ provide a clear and convincing reason for discounting plaintiff's credibility.

Second, the ALJ discounted plaintiff's subjective complaints because they are inconsistent with the objective medical evidence. A lack of objective medical record support is an appropriate basis for rejecting a claimant's testimony. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). As the ALJ correctly indicated, there is a lengthy absence of treatment between plaintiff's alleged onset of disability in 2009 and treatment records in January 2011. Based on this gap, the ALJ reasonably inferred that plaintiff's impairments were not as disabling as alleged, and permissibly discounted plaintiff's credibility on this basis. *See Id.* at 670-71 (ALJ may properly rely upon a claimant's failure to seek or follow treatment when making an adverse credibility determination); *Tommasetti*, 533

F.3d at 1039 (ALJ may rely on unexplained or inadequately explained failure to seek treatment to discredit claimant).

Also, the ALJ noted that plaintiff's medical records regarding his blurry vision, dizziness, fatigue, and shortness of breath were generally limited. The ALJ discussed that plaintiff sought treatment from Dr. Richert for blurry vision, dizziness and shortness of breath in January 2011. Dr. Richert diagnosed hypertension and started plaintiff on blood pressure medication. Tr. 289. As the ALJ indicated, plaintiff reported some shortness of breath and dizziness a week later, but those symptoms resolved by January 31, 2011. Tr. 290-92. Dr. Richert's treatment notes indicate that plaintiff complained of occasional fatigue in February 2011 and a stress test was recommended to assess potential heart disease issues. Tr. 294. As the ALJ correctly indicated, the cardiac workup showed a mild valve regurgitation, but was otherwise objectively negative. Tr. 27, 295.

As the ALJ discussed, plaintiff was diagnosed with bradycardia (low heart rate) with associated fatigue in August 2011 by Mohammed Khan, M.D., who noted that if plaintiff's symptoms worsened, he may require a pacemaker in the future. Tr. 29, 272. Dr. Khan reported that plaintiff's Cardiolite stress test was negative and echocardiogram results were normal. Tr. 273, 328, 330. Thus, as the ALJ reasonably inferred, the objective medical record does not

support plaintiff's allegations of severe fatigue, angina, or shortness of breath.   Tr. 27, 273, 295, 302, 332.

Additionally, the ALJ noted that the objective medical evidence was inconsistent with plaintiff's allegations of disabling back pain radiating into his lower extremities. As the ALJ correctly indicated, on July 7, 2011, plaintiff established care with Dr. Musselman's clinic, meeting with Viginia Hassler, FNP. Ms. Hassler's notes indicate that plaintiff complained of low back pain radiating bilaterally down his legs, and that plaintiff had positive straight leg raises, with diminished reflexes.   Ms. Hassler observed that plaintiff was so uncomfortable, he could not sit still on the examination table, shifting his weight from side to side. Tr. 319. In a follow-up visit with Dr. Musselman on July 21, 2011, plaintiff was advised to stop drinking, and Dr. Musselman found plaintiff's heel-to-toe walk normal, with a normal gait. Tr. 315.   Dr. Musselman ordered nerve conduction tests to assess plaintiff's complaints of bilateral neuropathy.   As the ALJ correctly indicated, there was *no evidence* of radiculopathy or peripheral neuropathy. Tr. 27, 315, 333. The ALJ also noted that Dr. Ali noted positive straight leg testing with spasms, but did not assess any functional limitations on standing, walking, sitting, and cited a heavy range of work for lifting and carrying. Tr. 30, 257-60.   These findings are supported by substantial

evidence, and the ALJ reasonably discounted the severity of plaintiffs subjective complaints.

Additionally, the ALJ found plaintiff's allegations of "heart problems" inconsistent with the objective medical record. To be sure, at the hearing, plaintiff insisted he experienced a heart attack on December 31, 2011. Tr. 56. As noted above, the ALJ thoroughly discussed the negative cardiac testing performed in March 2011 and August 2011, and correctly stated the record was silent with respect to a cardiac condition occurring on New Year's Eve. Tr. 60-62. Based on the absence of objective evidence, the ALJ legitimately discounted plaintiff's credibility on this basis.

As plaintiff highlights, the ALJ erred in discounting plaintiff's credibility based on a 2010 pre-employment drug screening test. The drug screening test does not pertain to plaintiff, yet was erroneously included in plaintiff's medical records before the ALJ.[1] Additionally, the ALJ found plaintiff's allegations of disabling back pain since 2009 inconsistent with a July 2011 report to Dr. Richert in which plaintiff stated that ibuprofen in the morning and hydrocodone in the evening "allows him to be active working during the day." Tr. 285. In this regard, the ALJ incorrectly attributed plaintiff's report to Dr. Richert as occurring in July 2011. A review of the record shows that

---

[1]The erroneous record has since been removed from the transcript. Tr. 251.

plaintiff made this report to Dr. Richert on April 26, 2007.   Tr.
285.   Thus, this particular finding is not supported by substantial
evidence,   and   the   ALJ   erred   in   relying   on   this   statement   to
discount plaintiff's credibility.

These errors, however, do not detract from the ALJ's citation
to the numerous other inconsistencies in plaintiff's testimony, the
unexplained absence of treatment, and a lack of objective support
in the overall medical record, findings that are wholly supported
by substantial evidence.   *See Carmickle*, 533 F.3d at 1163 (ALJ's
error does not negate the validity of the ALJ's adverse credibility
determination).   I conclude that when the remaining reasons are
taken together, they readily provide clear and convincing reasons
to   discredit   plaintiff.   Therefore,   any   errors   in   the   ALJ's
credibility determination are harmless.

II.   **Medical Evidence**

A.   **Standards**

In general, the opinion of a treating physician is given more
weight than the opinion of an examining physician, and the opinion
of an examining physician is afforded more weight than the opinion
of a nonexamining physician.   *Ghanim,* 763 F.3d at 1160; *Garrison v.
Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d
625, 632 (9th Cir. 2007).   "If a treating physician's opinion is
well-supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted)(alterations in original); 20 C.F.R. § 416.927(c). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

If the treating physician's opinion is contradicted, the ALJ must consider how much weight it is entitled to considering the factors in 20 C.F.R. § 416.927(c)(2-6). The factors include the length of the treatment relationship, the frequency of examination, the nature and supportability of the opinion, and its consistency with other evidence in the record as a whole. 20 C.F.R. § 416.927(d)(2-6); *Ghanim,* 763 F.3d at 1161. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Taylor v. Commissioner Soc. Sec. Admin.,* 659 F.3d 1228, 1232 (9th Cir. 2011). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

**B.   Analysis — Dr. Musselman**

Dr. Musselman treated plaintiff from July 2011 through October 2012. On October 15, 2011, Dr. Musselman authored a medical source

statement in which he described that plaintiff has an antalgic gait, dizziness and fatigue due to high blood pressure and bradycardia, and that plaintiff can sit for zero to two hours a day, stand or walk for two hours a day, and must alternate between sitting and standing every 60 minutes.  Tr. 356.  Dr. Musselman assessed that plaintiff can frequently lift and carry less than 10 pounds, occasionally lift and carry 20 pounds, and occasionally perform pushing/pulling activities with his upper and lower extremities.  Tr. 356.  Dr. Musselman provided that plaintiff can never climb ramps, scaffolds, ladders, or ropes, and is limited to occasional reaching in all directions.  Tr 356-57.  Dr. Musselman also opined that plaintiff requires unscheduled breaks, walking breaks and reclining breaks for one to two hours each day.  Tr. 357.

On October 25, 2012, Dr. Musselman authored a letter in which he indicated that plaintiff suffers from significant migraine cephalgia and osteoarthritis, labile hypertension, and that plaintiff's "general anxiety disorder is quite high when his pressure rises and he's in pain."  Tr. 392.  Continuing, Dr. Musselman provided that he has prescribed opioids for plaintiff's pain, and that he has "quasi control" of plaintiff's migraines. Tr. 392.  Dr. Musselman opined that plaintiff is not employable and described the following functional limitations:  plaintiff can stand, walk, or sit for zero to two hours a day, cannot climb

stairs, ladders, or scaffolds, his attention span is "quite short and his memory is limited."  Tr. 392.

Dr. Musselman's opinion was contradicted by treating physician Dr. Richert, examining physician Dr. Ali, and agency non-examining physicians A. Pan, M.D., and S. Clancey, M.D. Tr. 82, 104, 257-60, 304.  Therefore, the ALJ needed only to provide specific and legitimate reasons backed by substantial evidence, for discounting Dr. Musselman's opinion.  I conclude the ALJ's decision readily meets this standard.

The ALJ discounted Dr. Musselman's opinion that plaintiff is unable to perform full-time sedentary work for two reasons:  (1) it is inconsistent with Dr. Musselman's own treatment notes; and (2) it is inconsistent with objective medical findings and imaging.  As the ALJ correctly detailed, Dr. Musselman's 2011 opinion that plaintiff walks with an antalgic gait is contradicted by his own treatment notes.    The ALJ's finding is wholly supported by substantial evidence in the record.  To be sure, the on July 21, 2011, Dr. Musselman observed normal heel-toe walking and "no antalgic gait" and on July 27, 2012, again observed "[t]he gait is normal."  Tr. 315, 395.

Additionally, the ALJ found Dr. Musselman's 2012 opinion that plaintiff has limitations due to anxiety and memory issues are completely unsupported by Dr. Musselman's treatment notes.  As the ALJ correctly highlighted, Dr. Musselman's treatment notes are

silent with regard to any mental health issues. I reject plaintiff's contention that Dr. Musselman diagnosed plaintiff with an anxiety disorder. *See* Plaintiff's Opening Brief (#13), p. 8-9. As plaintiff indicates, in a one-time visit with FNP Hassler on July 7, 2011, the nurse described plaintiff's mood as anxious. Tr. 318-19. However, at no point do Dr. Musselman's treatment notes reflect a diagnosis of an anxiety disorder. As the ALJ correctly indicated, *no treatment records* indicate an anxiety disorder diagnosis and Dr. Musselman's treatment notes undercut plaintiff's current assertion. Tr. 31. On the contrary, Dr. Musselman's July 27, 2012 treatment note shows plaintiff's "mood/affect is appropriate" and an August 27, 2012, treatment note indicates plaintiff was "*negative* for anxiety, depression and sadness." Tr. 394 (emphasis added), Tr. 395. Additionally, at the hearing, plaintiff's attorney affirmatively indicated that plaintiff was not alleging disability based on any psychological impairment. Tr. 45. Furthermore, at Step Two, the ALJ found any alleged impairment based on plaintiff's alleged anxiety or depression non-medically determinable – a finding unchallenged by plaintiff.

In short, the ALJ's finding that Dr. Musselman's opinions are uncut by his own treatment notes is supported by substantial evidence in the record, and the ALJ reasonably discounted Dr. Musselman's opinions. I conclude that on the record before me,

this reason alone amounts to a specific and legitimate basis for discounting Dr. Musselman's opinions.  *Thomas*, 278 F.3d at 957.

The ALJ's second reason for discounting Dr. Musselman's opinion also is supported by substantial evidence in the record. As the ALJ noted, objective examination findings, testing and imaging are inconsistent with the severity of limitations opined by Dr. Musselman.  As the ALJ detailed, Dr. Musselman's October 2011 opinion that plaintiff is limited to occasional pushing, pulling, and reaching is unsupported.  On the contrary, Dr. Musselman's treatment notes demonstrate that in July 2012, plaintiff has "grossly normal tone and muscle strength" and "full range of motion of all major muscle groups and joints."  Tr. 392.  On August 18, 2011, plaintiff's musculoskeletal exam shows flattening lumbar spine with "paravertebral tenderness."  Tr. 396.  However, in August 2012, Dr. Musselman's musculoskeletal examination of plaintiff is negative for arthalgias and myalgias.  Tr. 394.  Thus, the ALJ reasonably concluded that Dr. Musselman's push/pull limitation was unsupported by objective examination findings and treatment notes.

Contrary to plaintiff's assertions, Dr. Musselman's opinion is not consistent with the overall diagnostic record.  And, as the ALJ discussed, plaintiff's imaging and objective testing in the record as a whole is inconsistent with the severity of limitations described by Dr. Musselman.  Tr. 27, 31.  Imaging of plaintiff's

back has shown mild arthrosis without impingement, nerve conduction tests have been normal, and cardiac stress testing was negative. Tr. 280, 295, 330, 334.  As discussed in detail above, given the lack objective findings and imaging supporting the severity Dr. Musselman's restrictions, the ALJ reasonably discounted his opinions on the basis of these significant discrepancies.

I disagree with plaintiff's argument that the ALJ discounted Dr. Musselman's opinion based on a lack of contact with plaintiff. Although the ALJ did state that Dr. Musselman's year and half long treatment of plaintiff was "without regular contact," the ALJ also indicated that the "most significant issue[s]" with Dr. Musselman's opinions were the "lack of objective findings per his own treatment notes on examinations and imaging." Tr. 31.  The ALJ then detailed the numerous, significant inconsistencies between Dr. Musselman's own examination treatment notes and his opinions, and the lack of objective findings to support the severity of restrictions he endorsed.  Even assuming *arguendo* that the ALJ erroneously erred in relying on a lack of contact as a basis for discounting Dr. Musselman's opinion, the error would be harmless.  The inconsistencies between Dr. Musselman's treatment notes and his opinions alone are a specific and legitimate reason on the record before me to justify giving those opinions less weight.[2]

_____

[2]In the decision, the ALJ erroneously attributed a May 20, 2011 opinion to Dr. Musselman, when it actually was authored Dr. Richert.  Tr. 30.  The ALJ gave the May 2011 opinion little

21 - OPINION AND ORDER

Therefore, I conclude the ALJ provided specific and legitimate reasons for discounting Dr. Musselman's opinions, backed by substantial evidence in the record as a whole, and the ALJ's evaluation of the medical evidence will not be disturbed.

## III. **Step Five**

An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008); *see Bayliss*, 427 F.3d at 1217 (the ALJ is only required to identify specific, credible limitations in the RFC; "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

I have not identified any harmful error by the ALJ in assessing plaintiff's credibility or evaluating the medical testimony, and therefore conclude that the RFC included all credible limitations. Because this determination is reasonable in light of the entire record and is supported by substantial

---

weight because the ALJ concluded that plaintiff was more limited than assessed in the May 20, 2011 opinion. Accordingly, I conclude any error in attributing that opinion to Dr. Musselman instead of Dr. Richert was harmless. *See Treichler v. Commissioner of Social Security Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)(noting an error may be harmless if it is "inconsequential to the ultimate nondisability determination" or if "the agency's path may be reasonably discerned, even if the agency explains its decision with less than ideal clarity").

evidence, the ALJ's RFC and Step Five finding are affirmed. *See Osenbrock v. Apfel,* 240 F.3d 1157, 1163-65 (9th Cir. 2001); *see also Burch*, 400 F.3d at 679 (ALJ's decision must be upheld where evidence is susceptible to more than one rational interpretation).

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this __/__ day of SEPTEMBER, 2015.

Malcolm F. Marsh
United States District Judge